UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------X
                            :
UNITED STATES OF AMERICA,    :
                            :   11-CR-639 (JFB)
        v.                   :
                            :   October 16, 2012
GERALD MACHACEK,             :
                            :   Central Islip, NY
            Defendant.       :
                            :
----------------------------X


TRANSCRIPT OF CRIMINAL CAUSE FOR PLEADING
BEFORE THE HONORABLE JOSEPH F. BIANCO
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Government:          LORETTA LYNCH, ESQ.
                             UNITED STATES ATTORNEY
                             BY: BURTON RYAN, ESQ.
                             ASSISTANT U.S. ATTORNEY
                             271 Cadman Plaza East
                             Brooklyn, New York  11201


For the Defendant:           ANTHONY LaPINTA, ESQ.




Audio Operator:


Court Transcriber:           ARIA SERVICES, INC.
                             c/o Elizabeth Barron
                             102 Sparrow Ridge Road
                             Carmel, NY 10512
                             (845) 260-1377



Proceedings recorded by electronic sound recording,
transcript produced by transcription service

1          THE CLERK:  Calling case 11-CR-639, U.S.A.

2   v. Gerald Machacek.  Counsel, please state your

3   appearance for the record.

4          MR. RYAN:  For the government, your Honor,

5   Burton Ryan.

6          THE COURT:  Good afternoon, Mr. Ryan.

7          MR. LaPINTA:  Good afternoon, your Honor.

8   For Mr. Machacek, Anthony LaPinta.

9          THE COURT:  Good afternoon, Mr. LaPinta.

10  And the defendant is present as well.  I apologize for

11  the delay but we are ready to proceed.  As you can see,

12  we don't have the court reporter here, so if everyone

13  could just remain seated and make sure that you're

14  using the mics, so that we have a good record of the

15  proceeding, that would be great.

16         Okay.  My understand is your client has an

17  application today, Mr. LaPinta.

18         MR. LaPINTA:  Yes, your Honor.

19         THE COURT:  What is that?

20         MR. LaPINTA:  The application is that he

21  will be entering a plea of guilty --

22         THE COURT:  Just pull the mic a little

23  closer to you.

24         MR. LaPINTA:  I'm sorry, sir.  The

25  application is that my client will be pleading guilty

1  to Counts 1, 6 and 11 of the superseding indictment.

2  THE COURT:  Okay.  And that's pursuant to an

3  agreement with the government?

4  MR. LaPINTA:  Yes, sir.

5  THE COURT:  Okay.

6  Is that correct, Mr. Machacek?

7  THE DEFENDANT:  Yes, your Honor.

8  THE COURT:  Okay.  Before I can accept your

9  guilty plea to those counts, Mr. Machacek, I have to

10  ask you a number of question, so that I can establish

11  to my satisfaction that you wish to plead guilty

12  because you are guilty and not for some other reason.

13  I also need to establish that you know what rights

14  you're giving up by pleading guilty.

15  So I'm going to ask you a series of

16  questions.  If you don't understand one of my

17  questions, let me know and I'll rephrase it, or if you

18  want to speak to Mr. LaPinta at any time for any

19  reason, let me know and I'll give you as much time as

20  you need to do that, okay?

21  THE DEFENDANT:  Yes, your Honor.

22  THE COURT:  Okay.  Are you speak, read and

23  understand English?

24  THE DEFENDANT:  Yes, your Honor.

25  THE COURT:  Okay.  If you could please raise

```
 1   your right hand.
 2              (Defendant is sworn.)
 3              THE COURT:  Okay, you can put your hand
 4   down.  Having been sworn, your answers to my questions
 5   will be subject to the penalties of perjury or making a
 6   false statement, if you do not answer truthfully.
 7              Do you understand that?
 8              THE DEFENDANT:  Yes, your Honor.
 9              THE COURT:  Could you state your full name
10   for the record?
11              THE DEFENDANT:  Gerald Machacek.
12              THE COURT:  How old are you, Mr. Machacek?
13              THE DEFENDANT:  43.
14              THE COURT:  You said you're 43?
15              THE DEFENDANT:  Yes, sir.
16              THE COURT:  Okay.  And how far did you go in
17   school?
18              THE DEFENDANT:  High school to college, some
19   college.
20              THE COURT:  Some college?
21              THE DEFENDANT:  Yes.
22              THE COURT:  Is that yes?  I didn't hear you.
23              THE DEFENDANT:  Yes.
24              THE COURT:  Okay.  Are you now or have you
25   recently been under the care of a doctor or a
```

1    psychiatrist?

2              THE DEFENDANT:  No.

3              THE COURT:  Have you ever been hospitalized

4    or treated for any mental illness, including any type

5    of addiction, such as drug or alcohol addiction?

6              THE DEFENDANT:  No, your Honor.

7              THE COURT:  Have you taken any drugs,

8    medicine or pills or any alcoholic beverages in the

9    past 48 hours?

10             THE DEFENDANT:  No.

11             THE COURT:  Is your mind clear today?

12             THE DEFENDANT:  Yes, your Honor.

13             THE COURT:  Do you understand what you're

14   doing today?

15             THE DEFENDANT:  Yes.

16             THE COURT:  Do either counsel have any doubt

17   as to the defendant's competence to plead at this time?

18             MR. LaPINTA:  I have no doubt.

19             THE COURT:  Mr. Ryan?

20             MR. RYAN:  None, Judge.

21             THE COURT:  Okay.  On the basis of Mr.

22   Machacek's responses to my questions, my observations

23   of his demeanor and the representations of counsel, I

24   find that he is fully competent to enter an informed

25   plea at this time.

1            Mr. Machacek, have you had sufficient time

2    to discuss this case with Mr. LaPinta, including any

3    possible defenses that you might have to the charges to

4    which you're pleading guilty?

5            THE DEFENDANT:  Yes, your Honor.

6            THE COURT:  Are you satisfied with your

7    attorney's representation?

8            THE DEFENDANT:  Yes, very.

9            THE COURT:  Okay.  I'm now going to describe

10   to you certain rights that you have under the

11   Constitution and laws of the United States.  You're

12   giving up these rights by pleading guilty, so please

13   listen carefully.

14           Under the Constitution and laws of the

15   United States, you're entitled to a speedy and public

16   trial by a jury, on the charges contained in

17   superseding indictment 11-639 (S-3).

18           Do you understand that?

19           THE DEFENDANT:  Yes, Judge.

20           THE COURT:  At the trial, you would be

21   presumed to be innocent and the government would be

22   required to prove your guilt.  They would have the

23   burden of proof by competent evidence beyond a

24   reasonable doubt, before you could be found guilty

25           Do you understand that?

1          THE DEFENDANT:  Yes, your Honor.

2          THE COURT:  A jury of twelve people would

3  have to agree unanimously that you were guilty and you

4  would not have to prove that you were innocent, if you

5  were to go to trial.

6          Do you understand that?

7          THE DEFENDANT:  Yes, your Honor.

8          THE COURT:  During the trial -- at the trial

9  and at every stage of your case, you would be entitled

10 to be represented by a lawyer, and if you could not

11 afford a lawyer, one would be appointed at public

12 expense, free of cost, to represent you at each and

13 every stage of the criminal proceeding.

14         Do you understand that?

15         THE DEFENDANT:  Yes, your Honor.

16         THE COURT:  During the trial, the government

17 would have to call the witnesses to court to testify in

18 your presence.  Your lawyer could cross-examine the

19 witnesses for the government, your lawyer could object

20 to evidence offered by the government, and your lawyer

21 could offer evidence on your own behalf, if you so

22 desired.  You'd also have the right to have subpoenas

23 issued or other process used to compel witnesses to

24 testify in your defense.

25         Do you understand that?

```
 1                THE DEFENDANT:  Yes, your Honor.

 2                THE COURT:  At the trial, although you would

 3   have the constitutional right to testify if you chose

 4   to do so, you also have the constitutional right not to

 5   testify.  And if you decided not to testify, no one,

 6   including the jury, could draw any adverse inference or

 7   suggestion of guilt from the fact that you did not

 8   testify.

 9                Do you understand that?

10                THE DEFENDANT:  Yes, Judge.

11                THE COURT:  If you're convicted at trial,

12   you would have the right to appeal the verdict.

13                Do you understand that?

14                THE DEFENDANT:  Yes, your Honor.

15                THE COURT:  Even now, as you're offering to

16   enter this guilty plea, you have the right to change

17   your mind, continue in a plea of not guilty, and go to

18   trial on the charges contained in superseding

19   indictment (S-3).

20                Do you understand that?

21                THE DEFENDANT:  Yes.

22                THE COURT:  If you plead guilty and if I

23   accept your plea, you will give up your right to a

24   trial and all the other rights that I've just discussed

25   with you, other than your right to an attorney, because
```

1  you have the right to an attorney regardless of whether

2  or not you plead guilty.

3          However, if you plead guilty, there will be

4  no trial and I will enter a judgment of guilty and

5  sentence you on the basis of your guilty plea, after

6  I've considered the presentence report and the

7  submissions and arguments by both sides, in connection

8  with your sentencing.  There will be no appeal on the

9  question of whether you did or did not commit the

10  crimes to which you are pleading guilty.

11          Do you understand that?

12          THE DEFENDANT:  Yes, Judge.

13          THE COURT:  If you plead guilty, you also

14  have to give up your right not to incriminate yourself

15  because in a moment, I'm going to ask you questions

16  about what you did, in order to satisfy myself that you

17  are guilty as charged, and you will have to admit and

18  acknowledge your guilt under oath.

19          Do you understand that?

20          THE DEFENDANT:  Yes, Judge.

21          THE COURT:  Mr. Machacek, are you willing to

22  give up your right to a trial and the other rights that

23  I've just discussed with you?

24          THE DEFENDANT:  Yes, Judge.

25          THE COURT:  Let me just summarize the

1   charges to which you're pleading guilty, to make sure

2   that you understand them.  I know you've obviously

3   discussed this with your attorney, but let me just

4   summarize them.

5           You're pleading guilty to Count 1, which is,

6   in summary, a robbery conspiracy, and it charges that

7   between approximately April 1st of 2000 and April 10th -

8   - excuse me, April 1st of 2010, that you, in the

9   district, along with others, knowingly and

10  intentionally conspired to commit robbery of illegal

11  narcotics traffickers and business owners in Brooklyn,

12  Queens, the Bronx, Nassau and Suffolk, in violation of

13  Section 1951 of Title 18.

14          Count 6 charges you with conspiracy to

15  launder money.  In summary, again, it charges that

16  between April 1st of 2008 and October 26th of 2011, in

17  this district and elsewhere, you along with others

18  knowingly and intentionally conspired to conduct

19  financial transactions in and affecting interstate

20  commerce, specifically money obtained from the sale of

21  controlled substances and robbery proceeds.  And

22  knowing that that property involved the proceeds form

23  this unlawful activity, you engaged in these

24  transactions with the intent to promote the carrying on

25  of the specified unlawful activity, in violation of the

money laundering statutes under federal law that are

stated in the indictment.

And finally, Count 11 charges you with the

use of a firearm during a crime of violence,

specifically that on or about January 29th of 2009, in

this district, that you with others knowingly and

intentionally used and carried a black handgun during

and in connection with the robberies in Count 1 to

Count 10, and that you knowingly and intentionally

possessed the gun in furtherance of those crimes of

violence, in violation of Section 924(c) of Title 18.

Do you understand, in summary, that that's

what the indictment charges you with?

THE DEFENDANT:  Yes, Judge.

THE COURT:  Let me just briefly go through

the elements of that crime that the government would

have to prove to the jury beyond a reasonable doubt, if

you were to go to trial on those charges.  Obviously,

you're giving up your right to have the jury make the

findings with respect to these elements, but I want to

make sure that you understand what those elements are.

First, with respect to the Hobbs Act robbery

conspiracy, the government would have to prove that

there was an agreement between two or more persons, not

including law enforcement people, people acting at the

1    direction of law enforcement, that there was an

2    agreement to commit robbery.  They would have to prove

3    the elements of the objective of robbery to the jury

4    specifically under federal law:

5              First, that the defendant knowingly obtained

6    or took the personal property of another or from the

7    presence of another;

8              second, that you took this property against

9    the victim's will, by actual or threatened force,

10   violence or fear of injury, whether immediately or in

11   the future;

12             and third, that the obtaining of the

13   property by force as described affected interstate

14   commerce in some way.

15             So it would have to prove each of the

16   elements of the objective of that conspiracy, and then

17   they would have to prove that you knowingly and

18   intentionally joined or participated in that conspiracy

19   to commit robbery or to bring about that objective, and

20   that it occurred on or about the dates of the

21   indictment in this district.  Those would be the

22   elements for Count 1.

23             With respect to Count 6, the conspiracy to

24   launder money, again, because it's a conspiracy, they

25   would have to prove two or more people, not at the

1    direction of law enforcement, agreed to commit the

2    crime of money laundering.  They would have to prove

3    each of the elements of that crime of money laundering

4    to the jury.  This is under Section 1956(a)(1)(A)(i).

5              Specifically, they would have to prove first

6    that there were financial transactions that were

7    conducted in and affecting interstate commerce.

8    Specifically here, we're talking about money that they

9    allege was from the sale of controlled substances and

10   robbery proceeds.

11             And they would have to prove that the

12   transactions involved the proceeds of these specified

13   unlawful activities, so they would have to prove that

14   the proceeds were from narcotics trafficking, in

15   violation of the federal narcotics laws that are stated

16   in the indictment, as well as robbery, in violation of

17   Section 1951 that I've already described to you.

18             And the next element of that crime is that

19   you must know that the property involved in the

20   transactions in fact represented the proceeds of that

21   unlawful activity.

22             And then the last element is that the

23   transaction as described was engaged in with the

24   attempt to promote the carrying on of the specified

25   unlawful activity.

1          So they would have to prove all of the

2     elements of money laundering with respect to the

3     conspiracy, and then again, they would have to prove

4     that you knowingly and intentionally joined and

5     participated in that conspiracy to launder the proceeds

6     of the robbery and narcotics offenses, and that it

7     occurred -- your participation in that conspiracy

8     occurred on or about the dates of the indictment in

9     this district.

10         Finally, with respect to Count 11, the use

11    of a firearm during a crime of violence:

12         First, they would have to prove the

13    underlying crime of violence, all of the elements of

14    the underlying crime of violence, that is Count 1 or

15    Count 10, which is a particular robbery, the January

16    29th, 2009 robbery.  They would have to prove the

17    elements of robbery as I've described them to you, that

18    that occurred -- that on or about January 29th, 2009,

19    that a robbery occurred, with all of the elements that

20    I've previously described.

21         And then they would have to prove that you

22    knowingly and intentionally used and carried a firearm

23    in connection with the robbery, and that you knowingly

24    and intentionally possessed that firearm in furtherance

25    of the robbery.

1          So they would have to prove all of those

2   elements to the jury beyond a reasonable doubt.  Again,

3   they would have to prove that it occurred on or about

4   January 29th of 2009, in this district.

5          Do you understand that if you were to go to

6   trial, the government would have to prove all those

7   elements to the jury beyond a reasonable doubt, and by

8   pleading guilty, you're giving up your right to have

9   them do so?

10          THE DEFENDANT:  Yes, Judge.

11          THE COURT:  Let me review with you now the

12   maximum penalties as well as any mandatory minimum

13   penalties for the crimes to which you're pleading

14   guilty.

15          Count 1, the conspiracy to commit robbery,

16   carries a maximum term of imprisonment of twenty years.

17   There is no minimum term of imprisonment.  There is a

18   maximum supervised release term of three years that

19   would follow any term of imprisonment.

20          There are conditions that are attached to

21   supervised release.  If you violate any of those

22   conditions, you can be sentenced to up to two years

23   additional in jail, without credit for pre-release

24   imprisonment or time previously served on post-release

25   supervision.

1        There is a maximum fine of the greatest of

2    $250,000 or two times the gross pecuniary gain derived

3    from the offense or two times the gross pecuniary loss

4    to persons other than yourself, resulting from the

5    offense.  You are also subject to restitution to the

6    victims of the crime, in an amount to be determined by

7    the Court at sentencing, which is not greater than the

8    dollar amount of the total losses suffered by the

9    victims of the robberies that are part of Count 1.

10        I'll get to this in a moment.  In your

11    agreement, you're consenting to have the Court include

12    the losses resulting from any related conduct in the

13    order of restitution, and I'll explain that more in a

14    moment, when I get to your agreement.  And, also,

15    restitution with respect to the offense of conviction

16    for this crime is mandatory.

17        There's also a $100 mandatory special

18    assessment, and you're also subject to criminal

19    forfeiture, which again I'll describe more in

20    connection with your agreement.

21        With respect to Count 6, conspiracy to

22    launder money, the maximum term of imprisonment is

23    twenty years.  There is no minimum term of

24    imprisonment.

25        There's a maximum supervised release term of

1  three years, to follow any term of imprisonment.  If a

2  condition of release is violated on this count, you may

3  be sentenced to up to two years, without credit for

4  pre-release imprisonment or time previously served on

5  post-release supervision.

6          You're subject to the greater of $500,000 or

7  twice the value of the funds involved in the money

8  laundering.  You're also subject to restitution, in an

9  amount to be determined by the Court.  Again,

10 restitution is mandatory.  There's a $100 mandatory

11 special assessment.  Again, for this count, you're also

12 subject to criminal forfeiture as well.

13         Finally, with respect to Count 11, the use

14 of a firearm during a crime of violence, there's a

15 mandatory minimum term of imprisonment of five years

16 that must run consecutively to any other sentences

17 imposed, including the sentences imposed on Counts 1

18 and 6.

19         You're also subject on Count 11 to a maximum

20 supervised release term of three years, to follow any

21 term of imprisonment.  If a condition of release is

22 violated, you could be sentenced to up to two years

23 additional in jail, without credit for pre-release

24 imprisonment or time previously served on post-release

25 supervision.

1    You're subject on this count to a maximum

2 fine of the greatest of $250,000 or two times the gross

3 pecuniary gain derived from the offense or two times

4 the gross pecuniary loss to persons other than yourself

5 resulting from the offense.

6    For Count 11, you're also subject to

7 restitution in an amount to be determined by the Court,

8 which is not greater than the dollar amount of the

9 total losses suffered by the victims of the offense in

10 Count 11.  Again, you're consenting to have the Court

11 include losses resulting from any related conduct in

12 any order of restitution.  You're also subject to a

13 $100 mandatory special assessment.

14    I want to emphasize to you that the

15 sentences for Counts 1 and 6 may be imposed

16 consecutively.  That's within the discretion of the

17 Court.  So they could be imposed to run one after the

18 other, and as I told you a moment ago, the sentence

19 imposed for Count 11 must run consecutively.  So in

20 total, you're exposing yourself to a maximum, with all

21 the counts combined, of 45 years in jail with a

22 mandatory minimum of five years.

23    Do you understand that those are the

24 applicable mandatory sentence -- those are the

25 applicable maximum sentences as well as the mandatory

1  minimum sentences for the crimes to which you're

2  pleading guilty?

3      THE DEFENDANT:  I understand, your Honor.

4      THE COURT:  Under the law -- let me just ask

5  you first, are you a United States citizen?

6      THE DEFENDANT:  Yes, sir.

7      THE COURT:  As a result of your guilty plea,

8  you may lose certain valuable civil rights, such as the

9  right to vote, the right to hold public office, the

10 right to serve on a jury and the right to bear a

11 firearm.

12     Do you understand that?

13     THE DEFENDANT:  Yes, your Honor.

14     THE COURT:  As part of the plea proceeding,

15 I need to describe to you a summary of how the

16 sentencing process works, just to make sure you

17 understand sentencing.  I'm sure Mr. LaPinta has

18 discussed this at length with you, but I'm going to

19 give you a brief summary, just to make sure that you

20 understand.

21     The first thing you need to understand is

22 that there is no such thing as parole in the federal

23 system.  It does not exist, so you will not be released

24 from prison any earlier on parole.

25     Second, the determination of what sentence

1   you will receive is to be made by the Court and only

2   the Court.  Nothing that your lawyer told you regarding

3   sentencing is binding on the Court.  Nothing that the

4   prosecutor may have told you is binding on the Court.

5   Sentencing is up to the Court, and as I said, I will

6   sentence you on the basis of your guilty plea, after

7   I've considered the presentence report and whatever

8   submissions and arguments are made by both sides in

9   connection with your sentencing.

10          The next thing I want to advise you about is

11  that under the current state of the law, before

12  imposing sentence, I am required by law to consider a

13  number of factors, statutory factors about this case,

14  including among others -- I'm not going to describe all

15  of them to you.  There's a list of them.

16          Some of the factors are the nature and

17  circumstances of the offense, your history and

18  characteristics, the need for the sentence imposed to

19  reflect the seriousness of the offense, to provide a

20  just sentence that accounts for the need to deter you

21  and others from committing the type of crime for which

22  you're convicted, and as I said, there are a number of

23  other factors as well.

24          One of the other factors I do want to

25  mention to you is something called the sentencing

1  guidelines.  These sentencing guidelines are, as the

2  name suggests, a set of guidelines that take into

3  account any criminal history that you have, as well as

4  the relevant criminal conduct that you have committed,

5  and it sets forth a range of imprisonment within which

6  you could be sentenced.

7          I want to emphasize to you that these

8  guidelines are not mandatory, they are only advisory,

9  which means I am not required to impose a sentence

10  within whatever the applicable range may turn out to

11  be.  I can sentence you above or below that range,

12  depending upon how I weigh all the factors that I am to

13  consider under the law.

14          Finally, whatever sentence I do ultimately

15  impose in this case, and no matter how happy or unhappy

16  you may be with that sentence, you may not withdraw or

17  get back your guilty plea.  In other words, while you

18  may appeal the sentence itself, you may not undue your

19  being found guilty by virtue of your plea here today.

20          Do you understand all those things about

21  sentencing?

22          THE DEFENDANT:  Yes, Judge.

23          THE COURT:  Have you entered into an

24  agreement with the government?

25          THE DEFENDANT:  Yes.

```
 1                    THE COURT:  I have the original, which I've

 2    marked as Court Exhibit 1.  Did you sign this today in

 3    the presence of Mr. LaPinta?

 4                    THE DEFENDANT:  Yes.

 5                    THE COURT:  Did you read it before you

 6    signed it?

 7                    THE DEFENDANT:  Yes.

 8                    THE COURT:  Did you discuss it with him

 9    before you signed it?

10                    THE DEFENDANT:  Yes.

11                    THE COURT:  Did you fully understand it

12    before you signed it?

13                    THE DEFENDANT:  Yes, your Honor.

14                    THE COURT:  Okay.  I just want to highlight

15    I guess three things, again, just to make sure that you

16    understand.  The first thing is the thing I mentioned a

17    moment ago regarding restitution.  Normally,

18    restitution can be ordered in connection with the

19    conduct that is the subject of the crime of conviction.

20    It says here in the agreement that you're agreeing to

21    restitution for all relevant conduct that relates to

22    these counts of conviction.

23                    So in other words, with respect to

24    robberies, you're agreeing to restitution to all the

25    victims of any robberies that you have been involved
```

1  in, whether or not you specifically mention it here

2  today when you allocute to the robberies.  So you're

3  agreeing that restitution will be ordered to all the

4  victims of the robberies.

5          Do you understand that?

6          THE DEFENDANT:  Yes.

7          THE COURT:  That's part of your agreement.

8          Do you understand that?

9          THE DEFENDANT:  Yes.

10          THE COURT:  The second thing is, with

11  respect to forfeiture, obviously, you're subject to

12  forfeiture as a result of these counts.  And as part of

13  your agreement, you're representing that there are no

14  monies or properties that you own or have an interest

15  in that are subject to forfeiture, that you've

16  disclosed all your assets to the government with

17  respect to that.

18          I just want to make sure you understand two

19  things:  That failure to disclose the assets or to

20  inform the government of any material changes up until

21  the time of sentencing would constitute, according to

22  your agreement, a breach of the agreement.  And should

23  any such assets ultimately be discovered, you're

24  agreeing as part of your -- this agreement to summary

25  forfeiture of whatever property or interest that may

1   be.  So there would not be a proceeding with respect to

2   that.

3              The government could breach -- could argue

4   that you've breached your agreement.  You would not get

5   an opportunity to withdraw your plea and you would be

6   subjecting yourself to summary forfeiture of that

7   interest as well.  This is laid out obviously in more

8   detail in the agreement, but that's I think an accurate

9   summary.

10             Is that correct, Mr. Ryan?

11             MR. RYAN:  That's correct, Judge.

12             THE DEFENDANT:  Yes, sir.

13             THE COURT:  Okay.  And then the last thing I

14  want to point out to you -- it's in paragraph 8.  That

15  paragraph says, among other things, that if the U.S.

16  attorney's office determines that you've cooperated

17  fully, that you've provided substantial assistance to

18  law enforcement, and that you otherwise complied with

19  the terms of the agreement, that they will file what's

20  called a 5k1.1 motion with the sentencing court that

21  sets forth the nature and extent of your cooperation.

22             Let me just ask Mr. Ryan -- I just want to

23  clarify this.  There's no provision --

24             MR. RYAN:  I noticed that myself.  We will

25  include --

1           THE COURT:  A 3553?

2           MR. RYAN:  -- 3553(e) section in there to

3    permit the Court to not only sentence him below the

4    advisory guidelines but also under any mandatory

5    minimum sentence that would otherwise be required by

6    statute.

7           THE COURT:  Okay, I'm writing that in and

8    I'm asking everybody just to initial that.

9           And then I'll explain that to you, Mr.

10   Machacek, because I'm sure Mr. LaPinta has discussed

11   with you but I think there's a typographical error.

12           (Pause in Proceedings)

13           THE COURT:  The record should reflect that

14   everybody has initialed that change to the agreement,

15   and I'm going to explain it to Mr. Machacek, just to

16   make sure he understands.

17           So if you cooperate fully with the

18   government, provide substantial assistance to law

19   enforcement and comply with the terms of the agreement,

20   they will file a motion under 5k1.1 of the sentencing

21   guidelines as well as 3553(e) that sets forth the

22   nature and extent of the cooperation.

23           That allows the government -- that allows

24   the Court to do two things:  One is to go below, if it

25   wishes to, the mandatory minimum sentence that would

1    otherwise apply to this offense, that five-year

2    mandatory minimum.  It would also allow the Court to

3    consider in applying the advisory guidelines that

4    cooperation in determining what your sentence is under

5    the advisory guideline range.

6              I want to emphasize a couple of things about

7    that.  First of all, as it says here, the decision of

8    whether or not you have met the requirements of this

9    paragraph, whether you cooperated fully, whether you

10   provided substantial assistance and whether you

11   complied with the agreement, is up to the U.S.

12   attorney's office.  They decide whether those

13   conditions are met, and if they decide not to file that

14   motion, you do not get an opportunity to get your plea

15   back.

16             The second thing is that even if they do

17   file that motion, that motion doesn't bind me in any

18   way.  I can sentence you above or below the mandatory

19   minimum.  Whatever I ultimately decide based upon all

20   the factors where to sentence you, that determination

21   is still up to the Court, regardless of any motion that

22   the government may make on your behalf.

23             Do you understand those things?

24             THE DEFENDANT:  Yes, Judge.

25             THE COURT:  Does this agreement constitute

1    your complete and entire agreement with the government?

2                    THE DEFENDANT:  Yes.

3                    THE COURT:  Has anyone offered you any

4    inducements or threatened you or forced you to enter

5    this agreement or to plead guilty?

6                    THE DEFENDANT:  No, your Honor.

7                    THE COURT:  Has anyone made any promise to

8    you as to what your sentence will be?

9                    THE DEFENDANT:  No, not at all.

10                   THE COURT:  Mr. LaPinta, do you know of any

11   valid defense that would prevail at trial or do you

12   know any reason why your client should not be permitted

13   to plead guilty?

14                   MR. LaPINTA:  I do not know of any valid

15   defenses, your Honor.

16                   THE COURT:  Okay.  Or any other reason why

17   your client should not be permitted to plead guilty?

18                   MR. LaPINTA:  No.

19                   THE COURT:  Okay.

20                   At this point, I need you to tell me in your

21   own words, Mr. Machacek, what you did that makes you

22   guilty of those counts, if you could just go through

23   them count by count with me, and then I may have some

24   followup questions for you.  Go ahead.

25                   THE DEFENDANT:  Okay, Count 1:  Between

1    April 1st, '08 and April 1st, 2010, I conspired with

2    others to obstruct the movement of articles and

3    commodities in commerce by robbing owners of businesses

4    in Queens.

5              THE COURT:  Okay, let me just ask a couple

6    of followup questions to that.  What type of businesses

7    were you --

8              THE DEFENDANT:  It was a medical office and

9    a perfume distributor.

10             THE COURT:  A medical office and a perfume

11   distributor?

12             THE DEFENDANT:  Yes.

13             THE COURT:  And these were in Queens?

14             THE DEFENDANT:  Yes.

15             THE COURT:  So you planned with others to

16   rob both of those places?

17             THE DEFENDANT:  Yes, I was there, yes.

18             THE COURT:  And did those robberies take

19   place?

20             THE DEFENDANT:  Yes.

21             THE COURT:  Were weapons used in those

22   robberies?

23             THE DEFENDANT:  Yes.

24             THE COURT:  What kind of weapons?

25             THE DEFENDANT:  It was a black handgun?

```
1                THE COURT:  In both of them?

2                THE DEFENDANT:  Yes.

3                THE COURT:  Okay.  And there were people

4    present during both of those robberies?

5                THE DEFENDANT:  Yeah, there was people

6    present, yes.

7                THE COURT:  People who worked with those

8    businesses?

9                THE DEFENDANT:  Yes.

10               THE COURT:  And you took money during those

11   robberies?

12               THE DEFENDANT:  My coconspirators did, yeah.

13               THE COURT:  Okay.  You went in there with

14   other people.

15               THE DEFENDANT:  I wasn't in there but they

16   were there with --

17               THE COURT:  What was your role?

18               THE DEFENDANT:  I was outside.

19               THE COURT:  Okay, you were outside.  Were

20   you a lookout?  What were you doing outside?

21               THE DEFENDANT:  Yeah, I was watching the

22   car.

23               THE COURT:  Okay.  And you understood,

24   obviously, when you went with them that while you were

25   watching the car, they were going to go in and commit
```

1   the armed robbery of these places?

2            THE DEFENDANT:  Yes.

3            THE COURT:  And they came out with the

4   proceeds of that?

5            THE DEFENDANT:  Yes.

6            THE COURT:  And when you joined this

7   conspiracy to commit these robberies with other

8   individuals, you did so knowingly and intentionally?

9            THE DEFENDANT:  Yes.

10           THE COURT:  You knew it was against the law?

11           THE DEFENDANT:  Yes.

12           THE COURT:  Okay.  You can move now to Count

13  6, the money laundering conspiracy.

14           THE DEFENDANT:  Okay.  On or between April

15  1st, '08 and October 26th, '11, I together with others

16  knowingly conspired to affect interstate commerce by

17  using money obtained from the sale of burglary and

18  robbery proceeds, knowing that the property involved in

19  the transaction represented the proceeds form illegal

20  activities that I committed with others.

21           THE COURT:  Before I ask you some followup

22  questions regarding that, what's the government's

23  theory in terms of the promotion?  What's the

24  government's theory?

25           MR. RYAN:  The government's evidence would

1    be that the proceeds were collected by Mr. Timothy

2    Glass, who sold them and then would use the monies from

3    the proceeds to distribute to the crew members, in

4    order to have them come back for further robberies.

5              THE COURT:  So like material articles were

6    sold?

7              MR. RYAN:  Material articles were stolen,

8    like the perfume was taken from the perfumery.  He

9    would exchange those for cash or sell them and then use

10   the monies to distribute to the robbery crew.

11             THE COURT:  Okay.

12             Let me just ask you then a couple of

13   followup questions.  So you agreed with others that the

14   property that was taken during robberies would be sold

15   and then the proceeds would be distributed --

16   distributed among the members of the robbery, in order

17   to promote the committing of additional robberies.

18             Is that all accurate?

19             THE DEFENDANT:  Yes, Judge.

20             THE COURT:  Again, what was your role in

21   connection to that?  Were you involved in --

22             THE DEFENDANT:  Transporting the stuff, you

23   know, driving them over there and driving some trucks

24   with stolen stuff.

25             THE COURT:  Okay.  So you drove the truck

1    that had the proceeds from the robbery?

2                  THE DEFENDANT:  Yes.

3                  THE COURT:  To a location where they were

4    going to be subsequently sold?

5                  THE DEFENDANT:  Yes, your Honor.

6                  THE COURT:  And then those proceeds were

7    distributed among those involved in the robbery?

8                  THE DEFENDANT:  Yes.

9                  THE COURT:  And you understood when you

10   agreed to do this that the purpose was to promote the

11   robberies and additional robberies in the future?

12                 THE DEFENDANT:  Yes, your Honor.

13                 THE COURT:  And you understood that those

14   things that you were driving in that truck were the

15   proceeds from the robberies themselves?

16                 THE DEFENDANT:  Yes.

17                 THE COURT:  Okay.  And this again took place

18   in Queens, among other places?

19                 THE DEFENDANT:  Yes.

20                 THE COURT:  Okay.  Moving to Count 11, use

21   of a firearm, can you tell me what you did in

22   connection with that?

23                 THE DEFENDANT:  I together with others

24   knowingly -- on 1/29/09, I together with others

25   knowingly and intentionally used a firearm to commit a

1  robbery in a physician's office in Queens.

2              THE COURT:  Okay.  I know we talked about

3  this I guess a little bit previously, in connection

4  with Count 1.  But, again, explain -- your role in

5  connection with this was what?  Were you outside on

6  this one?

7              THE DEFENDANT:  Yes.

8              THE COURT:  So you drove -- you drove them

9  or --

10             THE DEFENDANT:  No, I was just a passenger

11  in the car.

12             THE COURT:  Okay.  And your role was to wait

13  outside as a lookout and watch the car?

14             THE DEFENDANT:  Yes.

15             THE COURT:  And you knew one of the

16  individuals who went into the physician's office had a

17  gun?

18             THE DEFENDANT:  Yes.

19             THE COURT:  And was going to commit a

20  robbery?

21             THE DEFENDANT:  Yes.

22             THE COURT:  Okay.  Again, the robbery took

23  place and they received proceeds from individuals in

24  that doctor's office?

25             THE DEFENDANT:  Yes.

```
 1              THE COURT:  Did you knowingly and
 2   intentionally aid and assist in the use of this firearm
 3   during the robbery?
 4              THE DEFENDANT:  Yes.
 5              THE COURT:  And you knew it was against the
 6   law?
 7              THE DEFENDANT:  Yes.
 8              THE COURT:  Okay.
 9              Are there any other questions you want me to
10   put to the defendant?
11              MR. RYAN:  No, Judge, I believe all the
12   elements have been established.
13              THE COURT:  Okay, can you -- I know you did
14   this a little bit before but can you just summarize
15   what the government's proof would be if the defendant
16   were to go to trial?
17              MR. RYAN:  The proof would be that the
18   defendants would meet before these robberies at an
19   apartment in Queens, where guns would be distributed
20   and a plan of action for the particular robbery would
21   be described.  This particular defendant did go to at
22   least two robberies in Queens, one the office of -- the
23   house of the perfume distributor, who had the contents
24   and was believed to have a large amount of money in the
25   house.  A number of people entered there armed, robbed
```

1  that individual woman, stole a large amount of her

2  product, proceeds, money and jewelry, and then took it,

3  sold it and distributed it among the crew to pay for

4  that robbery and to promote future robberies.

5        Later on, they went to the doctor's office

6  of one of the -- of Ms. Bedell, who was a

7  coconspirator, and they again distributed guns amongst

8  themselves, drove to the doctor's office and robbed the

9  employees of the doctor's office, taking money, purses

10  and jewelry, and distributed that as well amongst

11  themselves, and sold the non-monetary items and

12  distributed the proceeds.

13        THE COURT:  Okay.  And the second is the one

14  that is the subject of Count 11?

15        MR. RYAN:  Count 11 is the doctor's office,

16  Judge.

17        THE COURT:  Okay.  And you'd be able to

18  prove that the firearm was used during that robbery?

19        MR. RYAN:  There were multiple firearms,

20  including a black handgun, that were distributed and

21  used during that robbery.

22        THE COURT:  Okay.  And you'd be able to

23  prove that these occurred on or about the dates in the

24  indictment for each of them.

25        MR. RYAN:  Correct, Judge.

```
 1              THE COURT:  And this is through the victims

 2    as well as other witnesses as well?

 3              MR. RYAN:  It's through victims and

 4    coconspirators' evidence.

 5              THE COURT:  Okay.  And with respect to the

 6    interstate commerce requirement, what would the

 7    government's proof be on that?

 8              MR. RYAN:  The government's proof would be

 9    that many of the items stolen were not manufactured in

10    the State of New York and that the businesses, each of

11    which were involved and affected interstate commerce.

12              THE COURT:  Okay.  And that would include

13    the proceeds with respect to the money laundering.

14              MR. RYAN:  Correct, Judge.

15              THE COURT:  Okay.

16              And your client is not contesting the

17    government's ability to prove the interstate commerce

18    requirement; is that correct, Mr. LaPinta?

19              MR. LaPINTA:  Yes, your Honor.

20              THE COURT:  Is that correct?

21              THE DEFENDANT:  Yes.

22              THE COURT:  Okay.

23              How do you now plead to Count 1 of

24    superseding indictment (S-3) 11-639, guilty or not

25    guilty?  How do you now plead?
```

1              THE DEFENDANT:  Guilty, sir.

2              THE COURT:  How do you now plead to Count 6

3  of superseding indictment (S-3), guilty or not guilty?

4              THE DEFENDANT:  Guilty, your Honor.

5              THE COURT:  And how do you now plead to

6  Count 11 of superseding indictment (S-3), guilty or not

7  guilty?

8              THE DEFENDANT:  Guilty, your Honor.

9              THE COURT:  Did you do what you're charged

10  with doing in those counts?

11              THE DEFENDANT:  Yes, your Honor.

12              THE COURT:  Are you pleading guilty because

13  you are guilty?

14              THE DEFENDANT:  Yes.

15              THE COURT:  Are you pleading guilty

16  voluntarily and of your own free will?

17              THE DEFENDANT:  Yes.

18              THE COURT:  Okay.  Because you acknowledge

19  that you're guilty as charged in those counts, because

20  you know your rights and are waiving them, because your

21  plea is entering knowingly and voluntarily and

22  supported by an independent basis in fact for each of

23  the elements of the offense, I accept your guilty plea

24  and I adjudge you guilty of Count 1, Count 6 and Count

25  11 of superseding indictment (S-3) 11-639.

```
1              Do you want me to hold off preparation of
2   the presentence report?
3              MR. RYAN:  Yes, Judge.  I believe Probation
4   has requested that they all be --
5              THE COURT:  Held in abeyance?
6              MR. RYAN:  -- held in abeyance.  There is a
7   person already assigned working on them, but I believe
8   they're going to try and do them all at once.
9              THE COURT:  Okay.
10             Do you agree with that?  In other words --
11             MR. LaPINTA:  I was hoping we could have it
12  completed sooner than later.
13             THE COURT:  Okay.  So I'm going to direct
14  that they -- I only do that if there's consent on both
15  sides.  If you would prefer to have them start that
16  process --
17             MR. LaPINTA:  Yes.
18             MR. RYAN:  That's fine, Judge.
19             THE COURT:  Okay.
20             MR. RYAN:  Because I think Probation will
21  work out its own schedule.
22             THE COURT:  Okay.  So I'm going to direct
23  that they prepare the presentence report.
24             Do you wish to be present for the interview?
25             MR. LaPINTA:  Yes, please.
```

```
 1              THE COURT:  Okay, that will be noted and
 2    we'll set sentencing for --
 3              THE CLERK:  February 15th at 2:00.
 4              THE COURT:  February 15th, 2013 at 2:00?  At
 5    2:00 p.m.
 6              MR. RYAN:  Thank you, Judge.
 7              THE COURT:  Okay.  Anything else?
 8              MR. RYAN:  That concludes the business,
 9    Judge.
10              MR. LaPINTA:  No, sir, thank you.
11              THE COURT:  Okay, thank you.
12                    * * * * * * * * *
13
14
15
16
17
18
19
20
21
22
23
24
25
```

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18         I certify that the foregoing is a correct

19    transcript from the electronic sound recording of the

20    proceedings in the above-entitled matter.

21

22

23

24

25    ELIZABETH BARRON                    November 27, 2012