

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

| | |
|---|---|
| ALB:CPK:BTR<br>F.#2010R002238 | *610 Federal Plaza*<br>*Central Islip, New York 11722* |

ECF and By Hand     December 23, 2016

The Honorable Joseph F. Bianco
United States District Judge
United States District Court
Eastern District of New York
1044 Federal Plaza
Central Islip, New York 11722-4454

      Re:  United States v. Adam Velazquez
           11 CR 639 (JFB)

Dear Judge Bianco:

    The Government respectfully submits this letter in connection with the government's pending 404(b) motion in limine. This letter contains both (i) an offer of proof which details the potential relevant testimony of Anthony Stravello ("Stravello") and (ii) a summary of the materiality of this testimony to the perjury charge.

### A.   Evidence of Anthony Stravello

    If called to testify, the government anticipates that Stravello would testify as follows:

(1) Between 1990 and March 2007, Stravello was in the business of selling wholesale-quantities of marijuana in Queens, New York. As part of that business, in the late 1990's, he was introduced to the defendant Adam Velazquez, another resident of Queens, New York, who was also a dealer in illegal drugs, including marijuana.

(2) Stravello has known Velazquez since 1999, prior to Adam Velazquez's first serious motorcycle accident. Stravello met with Velazquez on at least ten separate occasions between 1999 and 2005, usually in connection with drug trafficking.

(3) Sometime between 2000 through 2003, Stravello met with Adam Velazquez in Queens, New York in the vicinity of Adam Velazquez's home in Queens for the purpose of purchasing marijuana. Stravello recalled

           meeting with Velazquez and at least three other males who were occupants in a four door sedan with tinted windows.  According to Stravello, he and Velazquez subsequently proceeded to the trunk of the vehicle and viewed approximately 5 pounds of marijuana which Stravello described as high end (nugs).  Stravello and Velazquez negotiated a price for the marijuana.  Velazquez wanted $5,200.00 per pound for the marijuana and at that time Stravello declined to make the purchase.

(4) In subsequent meetings with Velazquez, through 2005, Stravello recalled accompanying an individual on two to three separate occasions to a park located at or near Francis Lewis Blvd. in Queens, New York.  During these occasions, Adam Velazquez sold quantities of vicodin pills in Stravello's presence.

(5) In 2004 Stravello met with Adam Velazquez and another person near Velazquez's home in Queens, New York.  During this meeting, Velazquez informed Stravello that he was coming into a large quantity of marijuana in the near future and if Stravello had any interest in purchasing any of it that he should start saving his money. Velazquez was carrying a firearm which Stravello described as a 9MM Taurus, two tone (silver and black).  Stravello viewed the firearm which appeared in good condition.  Velazquez told Stravello that he wanted to sell him the firearm for $1,500.  Stravello declined to purchase the firearm.

(6) Stravello was initially interviewed by agents on May 8, 2013.  At that time, Stravello recounted occasions on which Velazquez offered marijuana and pills for sale and that on one occasion he purchased 5 pounds of "nugs" or what he described as high end marijuana but refused to purchase any pills.  He recollected paying $3,500 per pound. Stravello then corrected himself and stated that he paid approximately $1,400 per pound for the "nugs" that were being sold for approximately $2,800 per pound at that time.  Stravello suggested to the agents that this low price indicated to him that the marijuana was stolen.

    This evidence will be offered to prove the perjury count and, as 404(b) evidence, to show identity and lack of mistake for all counts as well as for all other purposes identified in the government's prior submissions on this motion in limine. The drug trafficking crimes Stravello has admitted being involved in with Velazquez, or observing Velazquez engage in, are substantially similar to the drug dealing crime charged in

Count Four albeit for an earlier time period.  In sum, Stravello will testify to Velazquez's long history of drug trafficking in the Eastern District of New York which is both evidence of the perjury charge and 404(b) evidence for the other charges.  Other witnesses will testify to Velazquez's drug trafficking during the term of the conspiracy charged in Count Four.

B.  **Materiality of Stravello's Testimony to Perjury Prosecution and the Materiality of Velazquez's Testimony to the Motion for a New Trial**

Regarding materiality, the testimony of Stravello is material to the prosecution of the perjury charge. Some of the evidence that was 404(b) evidence before the addition of the perjury charge is now direct evidence of guilt. The new charge of Velazquez's perjury at the April post-trial hearing makes evidence that was previously argued to be 404(b) evidence in the now pending 404(b) motion direct evidence of the perjury charge.  For example, the testimony that defendant Adam Velazquez sold a person many pounds of marijuana on numerous occasions in 2000-2010 is now core proof of the perjury of Adam Velazquez, as charged in Count Six and core evidence of it.  Certain newly discovered evidence is overlapping evidence, meaning that the evidence not only includes testimony of Adam Velazquez's marijuana trafficking during the period of the conspiracy charged in Count Four, namely April 2008 to April 2010, but also includes testimony of marijuana trafficking in a period preceding the Count Four charged conspiracy, often from the same witnesses.  Such testimony, which may have been 404(b) evidence under the preceding indictment, is now core evidence of the perjury charged in Count Six.  In fact, much of the same evidence that convicts the defendant of the perjury count, Count Six, also convicts him of the drug trafficking count, Count Four.  Velazquez's perjurious testimony will be shown to be false by testimony and documentary evidence that shows his false testimony was material not only to his credibility but also to Count Four and, in addition, if truthful, would have provided a motive for Counts One, Two and Three, robbery of marijuana dealers.

In perjury trials conducted in federal courts, the issue of materiality of the alleged perjury is for the court and not the jury. Sinclair v. United States, 279 U.S. 263, 49 S.Ct. 268, 73 L.Ed. 692; United States v. Alu, 246 F.2d 29, 32 (2d Cir. 1957). See also Carroll v. United States, 16 F.2d 951, 954 (2d Cir.), cert. den. 273 U.S. 763, 47 S.Ct. 477, 71 L.Ed. 880 (1927); United States v. Siegel, 263 F.2d 530, 533 (2d Cir.), cert. den. 359 U.S. 1012, 79 S.Ct. 1147, 3 L.Ed.2d 1035 (1959). Cf., United States v. Zborowski, 271 F.2d 661, 664 (2d Cir. 1959). Courts in the Second Circuit followed the Ninth Circuit holding that "the materiality requirement of a perjury indictment may be met by a general statement that the matter was material." United States v. Ponticelli, 622 F.2d 985, 989 (9th Cir.) (citation omitted), cert. denied, 449 U.S. 1016, 101 S.Ct. 578, 66 L.Ed.2d 476 (1980). The test of materiality is whether the false testimony has a natural tendency to influence the trier of fact. Under that test, and indeed under any conceivable test, defendant's denial that he ever sold marijuana, which was a crime with which he was charged, is clearly material to the proceeding and case. Indeed, in a proceeding to vacate counts of conviction, if Velazquez had been truthful before this Court in April, 2016 when he testified, he would have been implicating himself in Count Four, one of the counts of conviction he sought to have set aside. He choose not to do that and instead bolstered his motion for a new trial by perjury. If he had answered truthfully and said "yes", he would have been asked "When did you sell marijuana?" and a truthful answer to that question would have been an admission of guilt to Count Four. There is no testimony that could be more material to a proceeding to set aside counts of conviction, especially where a defendant relies on misidentification and feigned innocence in that proceeding and a court relies, in part, on "prejudicial spillover" (Decision at 38), than an admission of guilt to a count of conviction.

**Conclusion**

   For the foregoing reasons, the government respectfully requests that the Court admit the proffered evidence which is both 404(b) evidence and direct evidence of guilt.

            Respectfully submitted

            ROBERT L. CAPERS
            United States Attorney

          By: */c/Charles P. Kelly*____
            CHARLES P. KELLY/6127
            BURTON T. RYAN, JR.
            Assistant U. S. Attorneys

cc: Gail Laser
   Attorney for Defendant